Hogeboom, J.
The object of this action was to obtain an injunction restraining the further prosecution of an ejectment suit, instituted by the defendant Mary Austin, against the plaintiff and her tenant, to recover certain premises in Brooklyn; and to cause to be delivered up to the *609 plaintiff a certain sheriff’s deed of said premises given upon the sale of the premises to the defendant Mary Austin, who had an assignment of the sheriff ’s certificate of sale from the defendant William Austin, who was the original purchaser at such sheriff’s sale, under a judgment obtained by the defendant Morris Schurck against one George Youngs. The plaintiff claims the equitable title to said premises, as being held by said Youngs as her trustee or for her benefit, under a deed to him prior to the lien of the judgment in question. And'the questions are, whether there is in fact such equitable title in the plaintiff, capable of being enforced in a court of justice; and whether it is superior to the apparent legal title conferred by the deed to Youngs. The deed to Youngs is absolute upon its face, and the grantors therein- were confessedly the ■ true owners of the premises at the time of making the conveyance. So that Youngs had in 1847 the apparently perfect legal title; and if such were the case, the judgment of the defendant Schurck would become a perfect and valid lien on it at the time it was obtained, in 1849.
The first question, therefox’e to determine is, what was the actual title of Youngs? The consideration of the deed to Youngs was two thousand dollars. He paid no part of lt; he never claimed to do so. The conveyance was intended for the benefit of the plaintiff, who -was then a minor of the age of about fifteen years. The plaintiff did not in fact advance the money, nor was it paid out of the property. One-half of it was advanced by her mother, the residue by her father—the latter being subsequently repaid to him out of the proceeds of a mortgage upon the premises executed by Youngs and confirmed by the plaintiff. Youngs never had possession of the px’emises, and only once collected the rent of it from the tenant, for the benefit of the plaintiff. The rents and profits of the premises wei’e always received by the plaintiff, or by her father for her benefit. The purchase was in fact made for the benefit of *610 •(¡he plaintiff, and was intended as a gift or advancement to her on the part of her parents. No question arises in the case between- her and her parents.. Her mother is dead, and her father desires to give effect to the deed to Youngs for her benefit. No question arises between her father, George H. Siemon, and his creditors. Their claims, if any they have, are not involved in this controversy; nor are they parties thereto. No question arises between Youngs and the plaintiff. He admits that he took the title for her benefit; that he so intended at the outset; that he did not advance the consideration; that she always had the equitable title; and he in fact vested, or attempted to vest the legal title in her by a conveyance of the premises to her, in May, 1853, after the sheriff’s sale but before the sheriff’s deed. The difficulty in the plaintiff’s title, if any there be, arises under those sections of the revised statutes which declare that where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another—except in cases where the title is thus taken without the knowledge óf the person paying the consideration, or where the alienee purchases the land with money belonging to another in violation of some trust—no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, subject, however, to a.resulting trust in favor of the creditors of the person paying the consideration, to the extent of their just demands. (1 E. S. 728, §§ 51, 52, 53.) By these sections, it is claimed on the part of the appellants, a complete legal title was vested; by the transaction in question, in Youngs. It is fairly inferrible from the phraseology of these sections, and is obvious from the notes of the revisers, that the principal if not the only mischief intended to be remedied and uprooted by these sections was a secret trust for the benefit of the p.erson paying the consideration. It was not deemed consistent with fair dealing and just *611 policy, that a person for whose use such a conveyance was made, and who was designed to reap all the benefits thereof, should thus conceal a real ownership under an assumed name; and the statute, therefore, virtually imposed upon him the penalty of the forfeiture of his estate.. No such argument—at least not in all its force—applies to the case of a gift or advancement made by a parent to a child, where the latter was intended to be vested with the beneficial ownership and the complete equitable title. It may be difficult to give a satisfactory reason why the title should not have been conveyed directly to the child for whose benefit the conveyance was intended; but whether the real motive was to conceal the character of the transaction from other children or equally deserving claimants upon the bounty of the parent, or from a supposed inconvenience or embarrassment in making the conveyance to a minor, or from ignorance or injudicious advice, or any other cause, we are able to see that the mischiefs of such a transaction are by no means as great as those arising from a secret trust in favor of the person paying the consideration himself. And we are to give a construction to this statute in accordance with the legislative intent, gathered primarily from the terms of the statute itselfj and such other sources of information, as the notes of cotemporaneous commentators, as are within our reach. Looking again .at the statute, the language is, no use or trust shall result in favor of the person by whom such payment shall be, made; which is not necessarily prohibitory of a resulting trust for- the benefit of a third person, in whose favor, for family or other lawful and sufficient reasons, it was deemed proper to make some provision. It is true, the section just quoted immediately afterwards contains the further words: “but the title shall vest in the person named as the alienee in such conveyance.” But these words must, I think, be read in connection with the preceding clause, and as if these words had been subjoined to the words last quoted, “ as between such *612 alienee, or parties deriving title through hint, and the person paying such consideration.” (See also Hosford v. Merwin, 5 Barbour, 51.)
Another exception has been engrafted or limitation made upon the apparently sweeping and comprehensive terms of this section, to wit: that if it does not appear that the absolute character of the deed, upon its face, was known to or designed by the person paying the consideration, it will be presumed that it was so written by fraud or mistake, and without any intent to violate the statute. This is clearly the effect of the cases of Day v. Roth (18 N. Y. 448), and Lounsbury v. Purdy (18 N. Y. 515.)
The principle of. those decisions applies with full force to .the present case. The deed was taken absolutely to Youngs, without the knowledge or consent of the plaintiff. And, although it appears that both Siemon, the father, and Mrs. Siemon, the mother, and Youngs, the grantee, designed that the deed should be taken' in the name of the latter for the benefit of-the plaintiff, it does not appear from their testimony, nor otherwise from the case, nor from the statement of facts found by the court, that they designed that the deed should be absolute on its face without any declaration of the trust or equitable ownership in favor of the daughter.
We may, therefore, without doing violence to the language of the statute, except this case from its operation in accordance with the manifest equity of the transaction; foi there is nothing to indicate in the slightest degree but everything on the contrary, to repel the presumption that Youngs obtained any credit with the plaintiff in the judgment growing out of his supposed ownership of the property in question.
When, therefore, Youngs conveyed this property to the plaintiff, he did no more than discharge an equitable and conscientious obligation, and carry into effect the agreement under which the property was conveyed to him. Resting *613 under this obligation, equity would have compelled him to fulfil it, and although he had the legal title, it was a mere naked title, without interest, and one upon, which the judgment could not fasten as an effeótive lien, The defendants cannot then be protected, unless they can show some right under their purchase independent of and superior to that which Youngs himself possessed.
Section fifty-four of the statute already quoted (1E. S. 728, § 54), declares that no implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of the trust. The defendants- are not .within this category, for the following reasons: 1. The plaintiff’s deed was on- record before the purchase at the sheriff’s sale. 2. The possession of the premises, and the receipt of the rents and profits, were never in Youngs, but always in the plaintiff, or in her father for her. 3,. William Austin and Schurclc had actual knowledge before the sheriff’s sale that Youngs did not hold the deed for his own benefit. 4. Mary Austin was not a purchaser for" a valuable consideration from her brother. 5. Neither William Austin nor Mary Austin, if notified before the purchase by them of facts affecting Youngs’ title, can be protected upon the ground that they had no such knowledge at the time of the judgment. In this particular their purchase takes effect from the time of the actual sale, and does not reach back by relation to the date of the judgment. (Jackson v. Post, 15 Wendell, 588, 596; White v. Carpenter, 2 Paige, 217; In re Howe, 1 Paige, 125; Buchan v. Sumner, 2 Barb. Ch. Reports, 207; Wilkes v. Harper, ibid. 350; Arnold v. Patrick, 6 Paige, 316.)
This disposes of the case upon the merits. It only remains to consider the formal question whether the plaintiff is barred from equitable relief in this action because she might, have interposed it as a defence in the ejectment suit. 1. It is sufficiently plain, perhaps, that the plaintiff *614 in tMs suit might have successfully defended the ejectment suit under the equitable title she now claims. 2. But she desired and obtained more comprehensive relief than she could obtain in the ejectment suit. This was: 1st. To set aside the sheriff’s deed to Mary Austin as a cloud upon the title. 2d. To compel a conveyance or release from Mary Austin and William Austin of their interest in the premises. 3d. To declare the judgment of Schurck to be no lien upon the premises, and perpetually enjoin its enforcement against them. To accomplish this, Schurck, not a party to the ejectment" suit, was a' necessary party to this suit.
For some of these purposes, I think-she was entitled to institute this action. The z-esult is that the judgment of the coúrt below should be affirmed with costs.
Davies, J.
The reasons given by Judge Emott (38 Barb. 9) for the judgment appealed from, are to my mind satisfactory and conclusive. It may, I think, be added thaS the provisions of the revised statutes relied upon have no application to this case. At common law, if a conveyance is made to one pei’son, and the consideration is paid by another, a trust in equity results in favor'of him who paid the money. If. this rule has not been modified or abrogated by the revised statutes, it will be conceded that od the payment of the money for'the purchase by Youngs, ¡8 trust resulted in favor of this plaintiff. It was paid fc s her and for her. benefit, and the same results follow as i t she had paid it herself. But it is contended that this rul > of the common law has been changed, as it undoubtedly has, by the provisions of section fifty-one of the revised statutes, relating to uses and trusts (3 B. S. 5th ed, p. 15), which declares that when a grant for a valuable consideration is made to one person, and the consideration is paid by another, no use or trust shall result in favor of the person by whom the payment is made, but the title shall vest *615 in the person named as alienee, subject only to the provisions of the next section. But the fifty-third section declares that the provisions of the fifty-first section shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the consent or knowledge of the person paying the consideration. Now it is found as a fact in this case that this plaintiff, who in substance .paid the consideration for this conveyance, had no knowledge of, and did not consent to, Youngs’ taking the conveyance absolutely and in his own name. It follows, therefore, that the provisions of the fifty-first section are inapplicable, and that the rule of the common law is revived, and by it the rights of the parties are tó be settled. '
We would also be justified in assuming, to maintain this judgment, if it were necessary, that neither Mr. or Mrs. Siemon gave any consent or had any knowledge that Youngs took the conveyance as an absolute one, in his own name. It is not found that they, or either of them, had such knowledge or gave such consent, and we therefore assume they had not, and never gave it. (Grant v. Morse, 22 N. Y. 323.) Neither of the Austins were bona fide purchasers, and can claim nothing as such. (Wood v. Robinson, 22 N. Y. 564.)
The judgment should be affirmed, with costs.
All the other judges concurring, judgment affirmed.